UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                     :
DERIC ROWE,                          :
                                     :
          Petitioner,                :     Civ. No. 13-4971 (NLH)
                                     :
     v.                              :     OPINION
                                     :
KENNETH NELSON, et al.,              :
                                     :
          Respondents.               :
_____:

APPEARANCES:
Deric Rowe, #488225 / 310202B
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625
     Petitioner, pro se

Jennifer L. Bentzel
Office of the Prosecutor, County of Burlington
49 Rancocas Rd.
P.O. Box 6000
Mount Holly, NJ 08060
     Counsel for Respondents


HILLMAN, District Judge

     Petitioner Deric Rowe, a prisoner confined at the New

Jersey State Prison in Trenton, New Jersey has submitted a

petition for writ of habeas corpus, under 28 U.S.C. § 2254,

challenging his state court conviction for first-degree robbery.

The respondents are Kenneth Nelson and the Attorney General of

the State of New Jersey.  For the reasons set forth below, the
Petition will be DENIED.[1]

> I.      FACTUAL BACKGROUND and PROCEDURAL HISTORY

The factual background of this case was succinctly
summarized by the state appellate court:

> On the afternoon of September 5, 2002, Elizabeth Cook,
> then seventy-six years old, went to the bank.  After
> completing her business inside, she walked toward her
> car, which she had parked in the bank's lot.  As she
> opened the car door and tossed her purse onto the
> passenger seat, a man approached her from the rear,
> held a hard object to her back and told her to get
> into the car.  Ms. Cook thought the man had a gun and
> she began to scream; the man quickly walked away. Ms.
> Cook looked toward the man and yelled at him, "What's
> the matter, what are you trying to do to me?"  She
> noted that he was wearing black pants and a hat with a
> visor that was hanging down in the back.  He got into

---

[1]To the extent that Petitioner's claims are unexhausted, this
Court will deny them on the merits pursuant to 28 U.S.C. §
2254(b)(2) ("An application for a writ of habeas corpus may be
denied on the merits, notwithstanding the failure of the
applicant to exhaust the remedies available in the courts of the
State"). See Carrascosa v. McGuire, 520 F.3d 249, 255 n. 10 (3d
Cir. 2008) ("There is, however, a difference between granting an
unexhausted habeas claim on the merits and denying such a claim
on the merits, as recognized by the plain language of section
2254(b)(2) . . . Denying an unexhausted claim on the merits is
consistent with the statute"); Taylor v. Horn, 504 F.3d 416, 427
(3d Cir. 2007) ("Here, because we will deny all of Taylor's
claims on the merits, we need not address exhaustion");
Bronshtein v. Horn, 404 F.3d 700, 728 (3d Cir. 2005) ("We would
permit Bronshtein to attempt on remand to establish a reason to
excuse his procedural default, but we find it unnecessary to do
so because it is apparent that the claims in question lack
merit.  Under 28 U.S.C. § 2254(b)(2), we may reject claims on
the merits even though they were not properly exhausted, and we
take that approach here").

a nearby car and drove away.  She also saw another man
standing across the parking lot.

Ms. Cook got into her own car.  She said she was too
shaken to go to the police and drove home, which took
only a few minutes.  Her son-in-law was there and,
crying, she told him what had happened to her.  He
called the police who came and took her statement.

The State also presented the testimony of Gary
Shivers, who had parked his car in the bank's lot and
walked toward the bank.  He saw a small blue Honda
that had only partially pulled into a stall in the
bank lot.  He then heard a woman scream and saw a man
walking toward the blue Honda.  Shivers said the man
was wearing a heavy jacket, which he thought unusual
for a warm September day.  When the man got to the
Honda, Shivers saw him trying to stuff a handgun into
a pocket.  Shivers said he saw the handle of the gun,
not the barrel.  The man got into the car and drove
away, but as he did so, Shivers noted the car's
license plate number and wrote it down.  After he
finished his business at the bank, he drove to the
police station to report what he had seen.

Defendant was apprehended later that day.  A search of
his car turned up a small orange cap of the type
placed on the barrels of toy plastic guns to signify
clearly they are not real weapons.  The police
returned to Mrs. Cook and took her for a drive-by [for
identification purposes], in which she identified
defendant.

State v. Rowe, No. A-7131-03T4, 2005 WL 3108492, at *1 (N.J.

Super. Ct. App. Div. Nov. 22, 2005).

On November 7, 2002, Petitioner was charged in a two-count

indictment for robbery, N.J.S.A. 2C:15-1a(2) (Count One), and

carjacking, N.J.S.A. 2C:15-2a(2) (Count Two).  At trial,

Petitioner testified on his own behalf:

He admitted he encountered Ms. Cook in the bank
parking lot but said their meeting was entirely
innocent.  According to defendant, he had parked his

car and was walking to pick up some Chinese food from a nearby Chinese restaurant when he bumped into Ms. Cook.  He said she made a remark to him which he interpreted as a racial slur.  He was angered by this and responded with a racial remark of his own.  He got into his car and drove away without going to the restaurant.  He was stopped by police as he arrived at his apartment complex.

State v. Rowe, No. A-7131-03T4, 2005 WL 3108492, at *1.

On March 9, 2004, a jury found Petitioner guilty of robbery, but was unable to reach a unanimous verdict with regard to Count Two, first-degree carjacking.  At sentencing on June 11, 2004, the trial court imposed an extended term of thirty years to robbery, subject to the parole ineligibility provisions of the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2, and dismissed the count for carjacking.

Petitioner appealed his conviction and sentence.  On November 22, 2005, the appellate division affirmed Petitioner's conviction, but remanded for sentencing. See State v. Rowe, No. A-7131-03T4, 2005 WL 3108492, at *1 (N.J. Super. Ct. App. Div. Nov. 22, 2005).  Petitioner filed a petition for certification to the Supreme Court of New Jersey.  On August 8, 2006, the New Jersey Supreme Court granted certification on the issue of defendant's sentence, and remanded the matter to the trial court for resentencing. See State v. Rowe, 188 N.J. 267, 905 A.2d 876 (2006).

Upon resentencing, the trial court again imposed a sentence of 30 years' imprisonment with an 85 percent period of parole ineligibility.  Petitioner appealed this sentence, and the appellate court affirmed.  His petition for certification to the Supreme Court of New Jersey was denied on September 24, 2009. See State v. Rowe, 200 N.J. 371, 982 A.2d 458 (2009).

Petitioner then filed a pro se petition for Post-Conviction Relief ("PCR") on April 15, 2010.  He amended his petition on September 13, 2010.  On September 20, 2010, Petitioner's counsel filed another brief in support of his PCR petition.  Among other things, Petitioner raised an ineffective assistance of counsel claim.  The matter was heard before the state PCR court on December 17, 2010.  On December 20, 2010, the PCR court issued a written opinion denying Petitioner's PCR petition. (Appendix Ra19, PCR Op., Dec. 20, 2010, ECF No. 9-22).  Specifically, the PCR court denied the petition as untimely because it was filed more than five years after Petitioner's June 11, 2004 conviction.  Despite the ruling of untimeliness, the PCR court addressed Petitioner's claims on the merits and found them to be without merit.  The PCR petition was denied formally in an order dated December 22, 2010. (Appendix Ra20, Order, Dec. 22, 2010, ECF No. 9-23).

Petitioner appealed the PCR court's ruling and, in an opinion dated January 11, 2013, the appellate court affirmed the

PCR court's determination that Petitioner's ineffective assistance of counsel claim failed on the merits. (Appendix Ra21, Appellate Order, Jan. 11, 2013, ECF No. 9-25).  The New Jersey Supreme Court denied the petition for certification on July 12, 2013. See State v. Rowe, 214 N.J. 175, 68 A.3d 890 (2013).

On or about August 14, 2013, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1).  On or about August 20, 2013, Petitioner paid the required filing fee and submitted an Amended Petition. (ECF No. 2).  In his Amended Petition, Petitioner asserts eight grounds for relief.  Namely he alleges, (1) "the trial court erred to defendant's prejudice by improperly charging the jury as to carjacking, necessitating reversal"; (2) "the trial court permitted improper and highly prejudicial hearsay testimony concerning the alleged crime, necessitating reversal"; (3) "the State committed significant and prejudicial misconduct, necessitating reversal"; (4) "the extended-term sentence imposed on defendant is improper and illegal"; (5) "the Defendant was denied the effective assistance of appellate counsel"; (6) "ineffective assistance of trial counsel"; (7) "Defendant's PCR petition should not have been procedurally barred"; and (8) "an evidentiary hearing is required for [Petitioner] to establish a

prima facie showing of ineffective assistance of counsel." (Am. Pet. 4, 5, 6, ECF No. 2).

The Court issued an Order to Answer on February 6, 2014. (ECF No. 5). After receiving an extension, Respondents filed their Answer on June 4, 2015. (ECF No. 9). As an initial matter, Respondents argue that some of Petitioner's claims are procedurally barred due to Petitioner's failure to comply with state procedural rules.[2] (Resp'ts' Br. 27, ECF No. 9). Alternatively, Respondents contend that Petitioner's claims should be denied on the merits.

Petitioner submitted his Reply on July 9, 2015. (ECF No. 11). The matter is now fully briefed.

## II.  DISCUSSION

### A. STANDARDS GOVERNING PETITIONER'S CLAIMS

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

---

[2] This Court notes that, to the extent the state courts addressed and rejected Petitioner's claims on the merits, this Court has no basis to refuse to consider the merits of those claims in the instant Petition. See Harris v. Reed, 489 U.S. 255, 265, 109 S. Ct. 1038, 1045, 103 L. Ed. 2d 308 (1989) ("Of course, if the state court under state law chooses not to rely on a procedural bar in such circumstances, then there is no basis for a federal habeas court's refusing to consider the merits of the federal claim."); see also Johnson v. Williams, 133 S. Ct. 1088, 1101, 185 L. Ed. 2d 105 (2013).

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., for the Court, Part II). "[A] state-court decision involves an unreasonable application of [Supreme Court] precedent if the state court identifies the correct governing legal rule but unreasonably

applies it to the facts of the particular state prisoner's case
. . ." White v. Woodall, 134 S. Ct. 1697, 1705, 188 L. Ed. 2d
698, reh'g denied, 134 S. Ct. 2835, 189 L. Ed. 2d 799 (2014)
(internal citations and quotations omitted).  "[A]n
'unreasonable application of' those holdings must be
'objectively unreasonable,' not merely wrong; even 'clear error'
will not suffice." Id. at 1702 (quoting Lockyer v. Andrade, 538
U.S. 63, 76, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003)).
Therefore, "a state prisoner must show that the state court's
ruling on the claim being presented in federal court was so
lacking in justification that there was an error well understood
and comprehended in existing law beyond any possibility for
fairminded disagreement." Id. (internal citations and quotations
omitted).  An state court's ruling may also involve an
"unreasonable application" of federal law "if the state court
either unreasonably extends a legal principle from [the Supreme
Court's] precedent to a new context where it should not apply or
unreasonably refuses to extend that principle to a new context
where it should apply," (although the Supreme Court expressly
declined to decide the latter). Williams, 529 U.S. at 407-09.

     In determining whether the state court's application of
Supreme Court precedent was objectively unreasonable, a habeas
court may consider the decisions of inferior federal courts. See
Glenn v. Wynder, 743 F.3d 402, 408 n.6 (3d Cir.), cert. denied

sub nom. Glenn v. Walsh, 134 S. Ct. 2700, 189 L. Ed. 2d 744 (2014); Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721–22 (3d Cir. 1989).

A. GROUND ONE

As his first basis for habeas relief, Petitioner asserts that the trial court erred by improperly charging the jury as to

the count of carjacking.  Petitioner asserts that "[t]he charge of carjacking was unsupported, and the jury's consideration of it was" a violation of his rights under the Fourteenth Amendment. (Am. Pet. 4, ECF No. 2).

In their Answer, Respondents contend that jury instructions cannot serve as the basis for federal relief in a habeas petition. (Resp'ts' Br. 29, ECF No. 9).  However, Petitioner does not challenge the particulars of the jury instructions. Rather, he challenges the fact that the charge of carjacking was submitted to the jury for consideration in the first instance.

The Supreme Court has stated that "habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L. Ed. 2d 353 (1993); see also Fry v. Pliler, 551 U.S. 112, 121, 127 S. Ct. 2321, 2328, 168 L. Ed. 2d 16 (2007) ("[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht . . . ."); Eley v. Erickson, 712 F.3d 837, 847 (3d Cir. 2013) (holding that a writ will only issue if the error was not harmless).

In this case the jury did not find Petitioner guilty of carjacking.  Therefore, it cannot be argued that the presentation of the carjacking charge to the jury resulted in "actual prejudice" in the form of an unconstitutional conviction.  Moreover, Petitioner does not argue that the submission of the carjacking charge to the jury had any collateral, prejudicial effect on any other aspect of his case. Further, with respect to this ground for relief, Petitioner seeks "reversal." (Am. Pet. 4, ECF No. 2).  However, because he was not convicted of carjacking; there is no conviction to be reversed.[3]

Accordingly, Petitioner has not established that the mere presentation of the charge of carjacking to the jury resulted in "actual prejudice," and he is not entitled to habeas relief on this ground. See Brecht, 507 U.S. at 637.

B. GROUND TWO

In his second ground for relief, Petitioner asserts that the "trial court permitted improper and highly prejudicial hearsay testimony concerning the alleged crime, necessitating reversal." (Am. Pet. 4, ECF No. 2).  Petitioner objects to the trial court's decision to permit a police officer, Officer

---

[3] To the extent Petitioner seeks reversal of the charge for which he was convicted, first-degree robbery, Petitioner has not offered a basis which would warrant this type of relief.

12

Spitler, to relay what the alleged victim had told him about the incident during his own testimony.  Specifically, during trial Officer Spitler stated,

> She advised me she was leaving the First Union Bank, walked over to her vehicle, a 1995 Ford Taurus that was parked in the bank parking lot.  When she got to the door she attempted to unlock her door when someone [w]alked up from behind her, she stated from her left approximately two parking spots away from her and placed something to her back and told her to get into the car.

(Trial Tr. 95:12-19, Mar. 3, 2004, ECF No. 9-29).

Respondents contend that the admission of this testimony was harmless. (Resp'ts' Br. 45, ECF No. 9).

In addressing this claim on direct appeal, the appellate court stated,

> Although we concur that this testimony should not have been presented in this manner, we do not agree that its receipt calls for a reversal of defendant's conviction.  Officer Spitler's testimony did not present to the jury any information that was not already before it through Ms. Cook's own testimony, about which she had been thoroughly cross-examined. Defendant's attorney, moreover, attempted through cross-examination of Officer Spitler to demonstrate certain weaknesses in Ms. Cook's alleged recitation of what had occurred. <u>Cotto</u>, <u>supra</u>, 182 N.J. at 331.  We are unable to conclude that this testimony constitutes plain error, i.e., it does not cause us to have a reasonable doubt that it led the jury to a result it otherwise would not have reached. <u>State v. Branch</u>, 182 N.J. 338 (2005).  That this is so is demonstrated by the jury's failure to convict defendant of carjacking.

<u>State v. Rowe</u>, No. A-7131-03T4, 2005 WL 3108492, at *4.

To the extent Petitioner contends that the trial court's
admission of the officer's hearsay testimony violated due
process, he is not entitled to habeas relief. See Marshall v.
Lonberger, 459 U.S. 422, 103 S. Ct. 843, 845, 74 L. Ed. 2d 646
(1983) ("The Due Process Clause does not permit the federal
courts to engage in a finely tuned review of the wisdom of state
evidentiary rules.").  Generally, admissibility of evidence is a
state law question which is not cognizable as a habeas claim.
See Keller v. Larkins, 251 F.3d 408, 416 n. 2 (3d Cir. 2001) ("A
federal habeas court . . . cannot decide whether the evidence in
question was properly allowed under the state law of evidence").

Further, the appellate court impliedly concluded that, even
if the challenged testimony constituted improper hearsay, its
admission did not have a prejudicial effect on Petitioner's
trial. State v. Rowe, No. A-7131-03T4, 2005 WL 3108492, at *4.
This Court must give deference to the state court's prejudice
analysis. See 28 U.S.C. § 2254(d)(1).

Moreover, as the appellate court noted, the testimony in
question did not introduce any information to the jury which had
not already been introduced through the testimony of the victim,
Ms. Cook, herself. See (Trial Tr. 17:7-19:3, Mar. 3, 2004, ECF
No. 9-29).  Officer Spitler's account of what the victim told
him was further corroborated by the testimony of an independent
witness, Mr. Shivers. See (Id. at 59:2-61:18).  Because there

14

was other testimony which relayed the same information contained
in the challenged testimony, the state court's determination
that Petitioner was not prejudiced by the admission of Officer
Spitler's testimony was not an unreasonable application of
clearly established federal law. Albrecht v. Horn, 485 F.3d 103,
135 (3d Cir. 2007) (state court's determination that petitioner
was not prejudiced by hearsay testimony of witnesses was not
unreasonable application of clearly established federal law, and
thus, federal habeas corpus relief was not warranted, since
there was other testimony of petitioner's threats and jury was
unlikely to have credited hearsay testimony over live
testimony).

Accordingly, Petitioner is not entitled to habeas relief on
this ground.

C. GROUND THREE

As his third ground for relief, Petitioner asserts that the
prosecutor gave damaging testimony in his summation, and he
refers the Court to the argument set forth in his brief on
direct appeal.[4] Respondents generally assert that Petitioner
cannot show that any prosecutorial conduct existed, and that

_____

[4] The Court notes that on appeal, Petitioner challenged the
remarks made in both the prosecutor's opening and closing
statements.  In this Petition, however, Petitioner limits his
challenge to the remarks made during the prosecutor's summation.
(Am. Pet. 5, ECF No. 2).

none of the prosecutor's statements were so improper so as to result in substantial prejudice to Petitioner's fundamental right to a fair trial. (Resp'ts' Br. 47-48, ECF No. 9).

In his brief on appeal, see (Appendix Ra6-redacted 31-39, Brief on Appeal, ECF No. 9-9), Petitioner argued that the prosecutor exhibited several instances of prosecutorial misconduct during his summation, thus, effectively depriving Petitioner of his fundamental right to a fair trial. The Court will address Petitioner's objections to each portion of the prosecutor's summation, in turn.

1. Standard of review

This Court notes that Petitioner's brief on appeal cites almost entirely to state law. Thus, Petitioner does not adequately identify the federal or constitutional law which he contends was violated by the prosecutor's summation. Nevertheless, in addressing the issue of prosecutorial misconduct on habeas review, the Third Circuit has stated

> The Supreme Court has held that federal habeas relief may be granted when the "prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" Greer v. Miller, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). The Court further opined that for due process to have been offended, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" Id. (citing United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)

16

(quoting <u>United States v. Agurs</u>, 427 U.S. 97, 108, 96
S.Ct. 2392, 49 L.Ed.2d 342 (1976))). <u>See also</u> <u>Ramseur</u>
<u>v. Beyer</u>, 983 F.2d 1215, 1239 (3d Cir. 1992) (our
review of a prosecutor's conduct in a state trial in a
federal habeas proceeding is limited to determining
whether the prosecutor's conduct "'so infect[ed] the
trial with unfairness as to make the resulting
conviction a denial of due process.'" (quoting <u>Greer</u>,
483 U.S. at 765, 107 S.Ct. 3102)).  This determination
will, at times, require us to draw a fine line -
distinguishing between ordinary trial error on one
hand, and "'that sort of egregious misconduct which
amounts to a denial of constitutional due process'" on
the other hand. <u>Ramseur</u>, 983 F.2d at 1239 (quoting
<u>United States ex rel. Perry v. Mulligan</u>, 544 F.2d 674,
678 (3d Cir. 1976)).

<u>Werts v. Vaughn</u>, 228 F.3d 178, 197-98 (3d Cir. 2000).

In evaluating whether the remarks of the prosecutor rise to
the level of a constitutional violation, "Supreme Court
precedent requires the reviewing court to weigh the prosecutor's
conduct, the effect of the curative instructions and the
strength of the evidence." <u>Moore v. Morton</u>, 255 F.3d 95, 107 (3d
Cir. 2001) (citing <u>Darden v. Wainwright</u>, 477 U.S. 168, 182, 106
S. Ct. 2464, 2472, 91 L. Ed. 2d 144 (1986)); <u>see also</u> <u>Werts</u>, 228
F.3d at 198 (citations omitted) ("The remarks must be
sufficiently prejudicial in the context of the entire trial to
violate a petitioner's due process rights."); <u>Ramseur</u>, 983 F.2d
at 1239 (citing <u>Greer</u>, 483 U.S. at 766, 107 S.Ct. 3102).

2. <u>Prosecutor's statements regarding credibility</u>

First, Petitioner objects to the following argument made by
the prosecutor during summation:

> Is there anything about any of the testimony the State
> presented that makes you wonder, Shake your head and
> say where are these people coming from?  None.  The
> only testimony that does that is Mr. Rowe's
> performance this morning.
>
>     . . .
>
> How do we get to this place in the world where two
> people, two honest and decent people just doing their
> duty, come in and testify and a convicted felon gets
> on the stand and says it's all wrong, it's all wrong,
> they're wrong, cops are wrong, where do we get to the
> place in the world where that can happen?  How do we
> get there?  I always tease my wife, I say I went to
> bed one night and I woke up and the world was
> different.  I woke up to tribal council and rose
> ceremonies and all those reality TV things and the
> world changed and I didn't know about it.  But on a
> more serious note, when did the world change that this
> guy gets on the stand, tells a ridiculous story for
> obvious reasons and anyone would think for a minute
> that that would trump these two people who never met
> each other, never talked to each other, and have
> absolutely no reason to lie?  How do we get there?
> How do we get there?

(Appendix Ra6-redacted 33, Br. on Appeal, ECF No. 9-9); (Trial

Tr. 49:22-50:13, Mar. 4, 2004, ECF No. 9-31).

    In his brief in support of his appeal, Petitioner asserted

that these statements "invited the jury to use the defendant's

prior conviction as evidence not merely as to credibility, but

as to character." (Appendix Ra6-redacted 35, Br. on Appeal, ECF

No. 9-9).  Further, Petitioner asserts that by referencing the

victim and witness as "two honest and decent people," the

prosecutor impermissibly vouched for their credibility. (Id.).

    In addressing this claim on appeal, the appellate court

stated,

> While a defendant's prior criminal record is a proper
> factor to weigh in assessing his credibility as a
> witness, that testimony is not automatically less
> credible because the defendant has had involvement
> with the criminal justice system.  The trial court,
> however, correctly explained the matter to the jury.
> Further, the prosecutor's characterization of
> defendant's testimony as "a ridiculous story"
> contravened the principle that a prosecutor should not
> disparage the defense.

State v. Rowe, No. A-7131-03T4, 2005 WL 3108492, at *6.

Although the appellate court did not expressly make a
ruling regarding these remarks, in affirming Petitioner's
conviction, it impliedly determined that the remarks were not so
prejudicial so as to have deprived Petitioner of a fair trial.
See id.  This Court finds that the state court's determination
was not contrary to, or an unreasonable application of,
controlling Supreme Court precedent.

As the appellate court noted, the trial judge gave thorough
instructions regarding the credibility of the witnesses and of
Petitioner. (Trial Tr. 60:25-62:15, Mar. 4, 2004, ECF No. 9-31);
(Id. at 57:6-8)("The lawyers, of course, have commented on what
they believe the testimony has shown you.  What they say
about it, however, is not evidence.").  Further, the fact that
the jury found Petitioner not guilty of carjacking indicates
that the prosecutor's remarks did not undermine the jury's
ability to view the evidence independently and fairly, and
further supports the appellate court's denial of Petitioner's

claim. See United States v. Young, 470 U.S. 1, 18 n.15, 105 S. Ct. 1038, 1048, 84 L. Ed. 2d 1 (1985) ("The jury acquitted respondent of the most serious charge he faced, interstate transportation of stolen property.  This reinforces our conclusion that the prosecutor's remarks did not undermine the jury's ability to view the evidence independently and fairly.").

Here, the New Jersey Appellate Division examined the prosecutor's challenged remarks and, although it suggested that they may have been improper, the appellate court held that when examined in light of the entire trial and the trial court's curative instructions, Petitioner had not been deprived of a fair trial.  This was the correct analysis under Supreme Court precedent. See Moore, 255 F.3d at 107.  Thus, even assuming that the prosecutor's comments regarding credibility were improper, Petitioner is not entitled to habeas relief on this ground.

3. Prosecutor's statements regarding crime in general

In his brief on appeal, Petitioner also objected to the following two passages in the prosecutor's summation:

> I've often wondered, I guess doing this job for a living kind of makes you wonder that but sometimes when you go out late at night and you go out to dinner maybe in Philadelphia or into a neighborhood, you're walking to your car and you're in an area where you start to think, well, maybe something might happen here.  I always wondered to myself if I was confronted with a similar situation that Mrs. Cook had, how would I react?

(Trial. Tr. 36:25-37:7, Mar. 4, 2004, ECF No. 9-31).

You know, just in closing, we don't lock our doors at
night because of Al-Quaida [sic] or people far away,
some land that we see on a flickering TV screen.  We
lock our doors because of fellow Americans who prey on
people and take advantage of the vulnerable.  That's
why we lock our doors cause we're vulnerable, whether
we're young or old, with gray hair, blond hair or
black hair.  In a lot of ways we're all vulnerable.
Mrs. Cook was vulnerable.  You don't need to be a
genius to know under the circumstances of this case
that she's vulnerable and he knew she was vulnerable
and that's why we're here, in part.

(Id. at 50:21-51:7).

With respect to these remarks, Petitioner argued that the

prosecutor was "divert[ing] the attention of the jurors to the

overall issue of crime, with the implicit contention that crime

in general is a problem that can be ameliorated by convicting

the [Petitioner]." (Appendix Ra6-redacted 36, Br. on Appeal, ECF

No. 9-9).

On appeal, the appellate court summarily concluded that,

"[a]lthough the prosecutor should not have invited the jury to

dwell upon its fears in this way, we do not deem the remarks

such as to have deprived defendant of a fair trial." State v.

Rowe, No. A-7131-03T4, 2005 WL 3108492, at *6.

This Court determines that, when considering the

prosecutor's challenged remarks in the context of the entire

trial, the appellate court's denial of Petitioner's claim with

respect to these remarks was not an unreasonable application of,

or contrary to, Supreme Court precedent.  In reaching this

conclusion, this Court notes that the trial judge properly instructed the jury on their duty "to weigh the evidence calmly, without passion, without prejudice, without sympathy because influences from those things might deprive either side, the State or Mr. Rowe, of what you have promised them, an impartial and fair trial by impartial and fair jurors." (Trial Tr. 54:17-22, Mar. 4, 2004, ECF No. 9-31).  Thorough instructions were also given regarding the jury's duty to consider only the specific evidence presented as it related to the charges against Petitioner. (Id. at 62:18-21) ("[Petitioner is] entitled to have his guilt or lack of guilt considered separately by you on the specific evidence as it relates to each charge."); see also (Id. at 63:10) ("And the issue really for you is to determine what crimes, if any, were attempted[.]").  A jury is presumed to follow its instructions. See Weeks v. Angelone, 528 U.S. 225, 234, 120 S. Ct. 727, 733, 145 L. Ed. 2d 727 (2000).  Therefore, there was nothing before the appellate court to suggest — as Petitioner argues — that the prosecutor's comments caused the jurors to base their decision on an overriding desire to "protect[] society" rather than on the evidence presented at trial. (Appendix Ra6-redacted 35, Br. on Appeal, ECF No. 9-9).

Moreover, the fact that the jury did not find Petitioner guilty of the charge of carjacking further supports the state appellate court's denial of Petitioner's claim. See Young, 470

U.S. at 18 n.15 (finding that jury's acquittal of respondent reinforced court's conclusion that the prosecutor's remarks did not undermine the jury's ability to view the evidence independently and fairly).  For the foregoing reasons, this Court determines that the state court's determination regarding the prosecutor's comments was not an unreasonable application of clearly established federal law.  Petitioner is not entitled to habeas relief on this ground.[5]

D. GROUND FOUR

    As his fourth ground for relief, Petitioner asserts that the extended-term sentence imposed upon him was improper and illegal, and in violation of Blakely v. Washington, 542 U.S.

---

[5] The Court notes that, in his brief on direct appeal, Petitioner also took issue with certain remarks that the prosecutor made during his opening statements, which Petitioner alleged improperly commented on the witness's trustworthiness, the Petitioner's character, and the pervasiveness of the crime. (Appendix Ra6-redacted 35, Br. on Appeal, ECF No. 9-9).  As stated earlier, Petitioner limits his Amended Petition to a challenge to the comments made in the prosecutor's summation (Am. Pet. 5, ECF No. 2); therefore, the Court does not discuss the prosecutor's opening statements in the body of this Opinion. Nevertheless, this Court notes that the trial judge gave a corrective instruction, and the jury did not find Petitioner guilty of the charge of carjacking. (Trial Tr. 63:4-8, Mar. 4, 2004, ECF No. 9-31) ("The history of a particular person alleged to be a victim does not impact on [the alleged crime], so you can't consider that.  That might give rise to some inappropriate sympathy so I'm going to suggest that you disregard it.").  Accordingly, even if Petitioner had challenged the prosecutor's opening statement in his Amended Petition, such a claim would fail for the same reasons discussed above.

296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Petitioner contends that "[t]he imposition of an extended term is not supported by the findings and violated his right to a jury trial." (Am. Pet. 5, ECF No. 2).[6]

Respondents contend that, to the extent Petitioner is challenging his initial sentence, such a claim is moot because Petitioner was resentenced. (Resp'ts' Br. 54-55, ECF No. 9). Furthermore, to the extent Petitioner means to challenge the sentence he received upon resentencing, Respondents argue that the sentence imposed was neither excessive nor unduly burdensome, and was proper under New Jersey state law. (Id. at 55-58). Accordingly, Respondents assert that neither of Petitioner's sentences — his initial sentence or the sentence imposed upon resentencing — violated his constitutional rights or federal law.

In addressing this argument on direct appeal, the appellate court stated:

> Defendant had an extensive criminal history, and the State sought the imposition of a discretionary extended-term sentence under N.J.S.A. 2C:44-3a. There is no doubt that defendant, who had seven prior

---

[6] The words "extended pages" appear in parentheses after the conclusion of Petitioner's supporting facts section for this ground for relief. However, it is unclear to the Court what is meant by this reference to "extended pages." No additional briefing was submitted in this matter and no "extended pages" are appended to the Amended Petition. Therefore, the Court will only consider the argument set forth in the Petition when considering this ground for relief.

convictions, was eligible for an extended-term
sentence.  Defendant makes two arguments: that the
manner in which the trial court imposed an extended-
term sentence was improper and that imposition of such
a sentence violated the principles enunciated in
Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531,
159 L. Ed.2d 403 (2004).  We agree with the first
proposition, but not the second.

In State v. Dunbar, 108 N.J. 80 (1987), the Supreme
Court discussed at length the procedures and criteria
governing extended-term sentencing for persistent
offenders.  The Court explicitly stated that it is
essential to such an extended-term sentence that the
court set forth its determination that "commitment [of
the defendant] for an extended term is necessary for
the protection of the public." Id. at 90.  The
sentencing court here, however, made no such finding
but merely noted the existence of defendant's prior
record.  It is the nature and quality of that record,
however, that must be analyzed to determine whether
the protection of the public calls for an extended
term.  We are, thus, compelled to remand the matter to
the trial court for purposes of engaging in that
analysis and resentencing.

State v. Rowe, No. A-7131-03T4, 2005 WL 3108492, at *6.

Thus, although the appellate court remanded the case for

resentencing, it rejected Petitioner's assertion that the

extended-term sentence violated his rights under Blakely.  This

Court finds that the appellate court's analysis in this respect

was reasonable.

In Blakely, the Supreme Court held that, other than the

fact of a prior conviction, any fact that increases the penalty

for a crime beyond the prescribed statutory maximum must be

submitted to a jury, and proved beyond a reasonable doubt. See

Blakely, 542 U.S. 296.  However, as the appellate court noted in this case, the statute which provided authority for the imposition of Petitioner's extended-term sentence — N.J.S.A. 2C:44-3a — relies solely upon a defendant's prior criminal record to define eligibility for an extended-term sentence.  The appellate court further noted that Petitioner, "who had seven prior convictions, was eligible for an extended-term sentence." State v. Rowe, No. A-7131-03T4, 2005 WL 3108492, at *6.

Because Petitioner's extended-term sentence was not based on anything other than his prior convictions, Petitioner's assertion that his sentence was "not supported by the requisite findings of fact" (Am. Pet. 5, ECF No. 2), is without merit. Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000) (holding that the fact of a prior conviction is an exception to the general rule that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt).  Accordingly, there is no Blakely violation and the state court's rejection of Petitioner's challenge to his extended-term sentence, which was properly imposed pursuant to N.J.S.A. 2C:44-3a, is not contrary to, or an unreasonable application of, existing Supreme Court precedent.  Petitioner is not entitled to habeas relief on this ground.

E. INEFFECTIVE ASSISTANCE CLAIMS: GROUNDS FIVE AND SIX

Petitioner asserts that he was denied ineffective assistance of appellate and trial counsel in his fifth and sixth grounds for relief, respectively.

1. STANDARD OF REVIEW

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added) (citations omitted), cited in Ross v. Varano, 712 F.3d 784, 797 (3d Cir. 2013). This right exists at sentencing in both capital and non-capital cases. See Lafler v. Cooper, 132 S.Ct. 1376, 1385–86, 182 L.Ed.2d 398 (2012) (collecting cases). "Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in Strickland prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" Id. at 1386 (quoting Glover v. United States, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (alteration in original)).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable

professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  With respect to the "performance" prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  With respect to the "prejudice" prong, a "reasonable probability" of prejudice is "a probability sufficient to undermine confidence in the outcome." Strickland at 694.  Thus, counsel's errors must have been "so serious as to deprive the defendant of . . . a trial whose result is reliable." Id. at 687.  The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id. at 697.

   2. GROUND FIVE: APPELLATE COUNSEL

   With respect to the performance of his appellate counsel, Petitioner asserts that appellate counsel failed to argue material claims on appeal; specifically, that Petitioner's conviction for first degree robbery was constitutionally deficient. (Am. Pet. 5, ECF No. 2).  Petitioner further clarifies that counsel's assistance was deficient because: (1) he failed to argue that the "state failed to offer proof beyond

a reasonable doubt that [Petitioner] either committed a theft or an attempted theft[;]" and (2) because he failed to argue that "the trial court committed reversible error when [it] failed to charge the jury on the knowingly [sic] element of the robbery offense." (Id.).

As an initial matter, the Court notes that Petitioner did not raise this issue before the state courts. Instead, the briefs in support of his PCR petition and in support of his appeal of the denial of his PCR petition focus on the performance of his trial counsel. Nevertheless, Petitioner's claim that he received ineffective assistance of appellate counsel fails on the merits for the reasons set forth below.

Here, Petitioner first asserts that his appellate counsel was ineffective for failing to argue on appeal that the "state failed to offer proof beyond a reasonable doubt that [Petitioner] either committed a theft or an attempted theft[.]" (Am. Pet. 5, ECF No. 2). Respondents assert that, because Petitioner is unable to show that this claim has any merit, appellate counsel could not be deficient for failing to address it. (Resp'ts' Br. 64, ECF No. 9). This Court agrees.

Presumably, Petitioner means to argue that his appellate counsel's performance was deficient because he failed to argue on appeal that the prosecution had failed to produce sufficient

evidence to prove its case.[7]  However, Petitioner has not provided any support for his bald assertion that the state failed to meet its burden of proof.  Therefore, he has not presented any argument to suggest that his appellate counsel was deficient for failing to raise a due process argument on appeal.

Moreover, this Court finds that there was sufficient evidence presented during the trial to support Petitioner's conviction. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original).  As the appellate court noted, two witnesses — the alleged victim and an eye witness — provided testimony regarding the incident. Specifically, the victim stated that Petitioner approached her from behind in the bank parking lot, held a hard object which

---

[7] See Tibbs v. Florida, 457 U.S. 31, 42, 102 S. Ct. 2211, 2218, 72 L. Ed. 2d 652 (1982) (discussing differences between reversals based on insufficiency of the evidence and reversals based on verdicts against the weight of the evidence).  Because Petitioner asserts that his "conviction on the first degree robbery charge is constitutionally deficient and must be vacated as the state failed to offer proof beyond a reasonable doubt[,]" Petitioner clearly believes his appellate counsel should have raised a due process claim challenging the sufficiency of the evidence.

she believed to be a gun to her back, and told her to get into the car. (Trial Tr. 17:7-21, 25:25-26:2, Mar. 3, 2004, ECF No. 9-29).  The eye witness testified that he heard a loud scream and saw someone walking back to his car while trying to "shove what appeared to be a handgun into his left pocket[.]" (Trial Tr. 61:5-18, Mar. 3, 2004, ECF No. 9-29).  This eye witness wrote down the license plate number of the vehicle, which led authorities to Petitioner. (Id. at 64:10-12).  Although Petitioner presented a different narrative of the incident, the jury — by finding Petitioner guilty — chose to believe the testimony of the witnesses over Petitioner's own testimony.

Because this Court determines that there was sufficient evidence to support Petitioner's conviction, Petitioner was not prejudiced by appellate counsel's failure to challenge the sufficiency of the evidence on appeal.  Therefore, this Court finds that Petitioner is unable to satisfy the prejudice prong regarding his assertion that counsel was ineffective because he did not argue that the "state failed to offer proof beyond a reasonable doubt that [Petitioner] either committed a theft or an attempted theft[.]" (Am. Pet. 5, ECF No. 2); Strickland, 466 U.S. at 697.  Additionally, habeas relief under Strickland is not available where a petitioner claims that his counsel failed to raise a claim that the court determines is without merit. See Strickland, 466 U.S. at 691; Lemons v. Warren, No. 12-2355, 2015

WL 1497330, at *21 (D.N.J. Apr. 1, 2015) (citing Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001)) ("Appellate counsel is not ineffective by failing to raise meritless claims."). Because Petitioner's argument that the State failed to meet its burden of proof does not have merit, appellate counsel's performance was not ineffective by failing to raise this issue on appeal.

Petitioner's second argument with respect to his appellate counsel's performance is that he was ineffective for failing to argue that "the trial court committed reversible error when [it] failed to charge the jury on the knowingly [sic] element of the robbery offense." (Am. Pet. 5, ECF No. 2).  In other words, Petitioner contends that the jury instruction was deficient because it failed to include an element regarding a knowing intent, and Petitioner asserts that his appellate counsel was ineffective for not raising this due process argument on appeal. However, as Respondents point out, the crime of robbery in New Jersey, N.J.S.A. 2C:15-1(a), does not include a "knowing" element. See N.J. STAT. ANN. § 2C:15-1 (West 2015) ("A person is guilty of robbery if, in the course of committing a theft, he: (1) Inflicts bodily injury or uses force upon another; or (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or (3) Commits or threatens immediately to commit any crime of the first or second degree.  An act shall

be deemed to be included in the phrase 'in the course of committing a theft' if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.").

Because there is no "knowing" element in the New Jersey robbery statute, the trial court did not err by failing to include an instruction on it.  Therefore, Petitioner was not prejudiced by his appellate counsel's failure to raise this due process argument on appeal and he fails to satisfy the prejudice prong of Strickland. See Strickland, 466 U.S. at 697. Additionally, because Petitioner's claim is without merit, appellate counsel was not ineffective for failing to raise it on appeal. See Id. at 691; Lemons, No. 12-2355, 2015 WL 1497330, at *21.

    3. GROUND SIX: TRIAL COUNSEL

In this ground for relief, Petitioner relies on the arguments set forth in his counsel's brief in support of his PCR petition.  In his brief, Petitioner argues that trial counsel was ineffective for failing to elicit testimony from Petitioner about: "(1) Petitioner's employment at the time[;] (2) Petitioner's residence with Jenny Forman [and] Petitioner's being provided with use of a car by Jenny Forman[;] (3) the fact that Petitioner often drove the car with three (3) children as passengers[; and] (4) Petitioner's having a paycheck in his pocket at the time of the alleged crime." (Appendix Ra17 8-9,

Br. In Support of PCR, ECF No. 9-20).  In summary, Petitioner argues that his trial counsel "disregarded critical information that would have eviscerated essential elements of the State's case at trial." (Id. at 13).

In addressing this argument, the PCR court employed the standard set forth in Strickland, and noted that Petitioner's complaints were "matters of trial strategy employed by defendant's attorney and do not represent the ineffective assistance of counsel." (Appendix Ra19 11, PCR Op., Dec. 20, 2010, ECF No. 9-22) (citing Strickland, 466 U.S. at 689). Accordingly, the PCR court found that Petitioner had failed to show that trial counsel's performance was deficient as to amount to ineffective assistance.  On appeal, the appellate court summarily affirmed this decision. (Appendix Ra23 3, Appellate Order Affirming PCR Op., Jan. 11, 2013, ECF No. 9-25).  For the reasons that follow, this Court concludes that the state court's determinations are not contrary to, or an unreasonable application of, clearly established federal law.

> a) Failure to elicit testimony regarding Petitioner's employment and the fact that he had a paycheck in his pocket

Petitioner first asserts that his trial counsel was ineffective due to his failure to elicit testimony to establish that Petitioner had employment at the time of the alleged crime.

Petitioner also contends that his counsel was ineffective because he did not elicit testimony that Petitioner had a paycheck in his pocket at the time of the alleged crime. Petitioner argues that these pieces of information would have established that Petitioner had no need for funds and, thus, would have eliminated any motive for Petitioner to commit a crime to obtain cash. (Appendix Ra17 12, Br. In Support of PCR, ECF No. 9-20).  Because the crux of both of these arguments is that trial counsel was ineffective for failing to demonstrate to a jury that Petitioner did not have a financial motive to commit the crime, the Court will address these arguments together.

The Court first notes that, in evaluating counsel's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 668-89.  A petitioner must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 690-92; see also Showers v. Beard, 586 F. Supp. 2d 310, 321 (M.D. Pa. 2008) aff'd, 635 F.3d 625 (3d Cir. 2011).  Here, as the PCR court noted, "if defense counsel had asked about [Petitioner's] employment, the door would have been opened for the State to ask about [Petitioner's] financial status, which might have been detrimental to his case." (Appendix Ra19 13, PCR Op., Dec. 20, 2010, ECF No. 9-22).

Indeed, the fact that trial counsel objected at trial to the prosecutor's line of questioning regarding Petitioner's employment, supports the conclusion that trial counsel's strategy was precisely to avoid a discussion on "economics," or Petitioner's financial status. <u>See</u> (Trial Tr. 85:14 - 86:22).

Based on the record, this Court determines that the state court's conclusion that trial counsel's strategy was within the wide range of reasonable professional assistance contemplated in <u>Strickland</u> was not an unreasonable application of, or contrary to, Supreme Court precedent.   Accordingly, Petitioner is not entitled to habeas relief on this ground.

> b) <u>Failure to elicit testimony that Petitioner lived with his girlfriend, who had three children, and drove his girlfriend's car</u>

Petitioner next asserts that his trial counsel was ineffective due to his failure to elicit testimony to establish that Petitioner lived with his girlfriend, Jenny Forman; that she allowed Petitioner to use her car; and that Petitioner drove the car with Jenny Forman's children as passengers.   Petitioner asserts that this information would have informed a jury that he "was enjoying a stable life with Jenny Forman" and would have provided an explanation as to why a child's cap gun cover was found" in the car he was driving. (Appendix Ra17 9, Br. In Support of PCR, ECF No. 9-20).

36

As the PCR court noted, testimony was presented to establish that Petitioner lived with his girlfriend, that he drove her car, and that she had children.  On direct examination, Petitioner testified that he was driving his girlfriend's car. (Trial Tr. 63:6-7, Mar. 4, 2004, ECF No. 9-30) ("After I seen that I said, well, let me go get my girlfriend's car.").  Further, on cross examination, Petitioner established that he was living with his girlfriend. (Trial Tr. 87:15-717, Mar. 4, 2004, ECF No. 9-30) ("Q: Well, you were living with your girlfriend, correct?  A: Yes.").

Likewise, the jury was also made aware of Petitioner's explanation for the presence of a toy gun cap in the car he was driving. (Appendix Ra19 12, PCR Op., Dec. 20, 2010, ECF No. 9-22) ("When asked why he would have a child's toy in his car, [Petitioner] testified that he was living with his girlfriend at the time and that she had children.").  Although Petitioner attempts to categorize the reference to his girlfriend's children as "a vague reference to children in the car brought out during cross-examination" (Appendix Ra17 13, Br. In Support of PCR, ECF No. 9-20), this Court finds that the testimony was very specific and clearly alerted the jury to the fact that Petitioner's purported reason for having a child's toy in the car he was driving was because the car belonged to his girlfriend, who had children. See (Trial Tr. 18:12-14, Mar. 4,

2004, ECF No. 9-30) ("Q: So there is no reason for children's toys to be in a car you are driving, correct?  A: My girlfriend has children."). Thus, the jury was, in fact, made aware of Petitioner's explanation for the presence of the toy gun cap in his car; and, during testimony at trial the jury was presented with precisely the information Petitioner asserts should have been elicited by trial counsel.

Finally, this Court finds that Petitioner cannot demonstrate prejudice due to trial counsel's failure to elicit testimony regarding the precise number of children that Petitioner's girlfriend had — three children. As set forth above, the jury was made aware of the fact that Petitioner lived with his girlfriend and drove her car; that his girlfriend had children; and that Petitioner's explanation for the presence of the toy gun cap in his car was because he was driving his girlfriend's car and she had children. This Court finds that the precise number of children his girlfriend had would not have affected the outcome of the trial. See Strickland, 466 U.S. at 694. Rather, as the PCR court noted, it is apparent from the verdict that the jury relied on the testimony of the victim and the eyewitness, and rejected Petitioner's explanations. (Appendix Ra19 14-15, PCR Op., Dec. 20, 2010, ECF No. 9-22).

For these reasons, this Court finds that the state court's determination that trial counsel was not ineffective was not

contrary to, or an unreasonable application of, existing Supreme Court precedent.  Accordingly, Petitioner is not entitled to habeas relief on this ground.

> c) Other alleged failures mentioned in Petitioner's brief in support of PCR

This Court takes this opportunity to address several references to alleged errors of trial counsel mentioned in Petitioner's brief in support of his PCR petition, despite the fact that they are not specifically or individually raised as arguments.

First, Petitioner takes issue with the fact that his trial counsel did not elicit testimony regarding Petitioner's prior convictions on direct examination. (Appendix Ra17 9, 10, 13, Br. In Support of PCR, ECF No. 9-20).  However, Petitioner himself concedes that "[a]lthough the fact that counsel allowed the prior convictions of the Petitioner to be brought out on cross-examination [] rather than on direct examination thus highlighting their import, this might somehow be characterized as a matter of trial strategy or style." (Id. at 9).  Indeed, given the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy," Strickland, 466 U.S. at 690-92, this Court agrees with the PCR court's determination that trial counsel was not ineffective because he declined to draw attention to

Petitioner's prior criminal history on direct examination. (Appendix Ra19 14, PCR Op., Dec. 20, 2010, ECF No. 9-22). Accordingly, Petitioner is not entitled to habeas relief on this ground.

Next, Petitioner argues that trial counsel "permitted the jury to see the petitioner as a person with a vague explanation for moving his car to the bank parking area, also with an odd explanation for never getting Chinese food after that was his original plan . . . and arguably a person with no settled existence in the area[.]" (Appendix Ra17 13, Br. In Support of PCR, ECF No. 9-20).  As the PCR court noted, Petitioner "explained his parking spot selection process and he explained that he decided to go to McDonald's because he was upset after his encounter with Ms. Cook." (Appendix Ra19 14, PCR Op., Dec. 20, 2010, ECF No. 9-22).

Indeed, with respect to why Petitioner moved his car from a legal parking space in the bank parking lot, Petitioner explained that he did so because he was afraid of getting a ticket. See (Trial Tr. 81:18-25, Mar. 4, 2004, ECF No. 9-30) ("Q: Okay. And the reason for that is what?  A: Didn't want to get no ticket.  Q: Well, you are in a regulation park space, correct?  A: Yes.  Q You weren't worried about getting a ticket, were you?  A: I have gotten tickets.").  On redirect Petitioner further clarified his reason for believing he would

40

get a ticket and for moving the car. (<u>Id.</u> at 105:4-5) ("Q: Why did you think you would get a ticket in that area, Mr. Rowe? . . . A: Any other banks, if you parked there, you will get tickets."). Also, Petitioner stated that he decided to abandon his plan to go to the Chinese restaurant and to go elsewhere — ultimately McDonald's — because he was upset about his encounter with the victim. <u>See</u> (<u>Id.</u> at 91:23-25) ("After I had the argument with her I decided, well, I am just going to leave. I was upset.").

Finally, this Court finds that Petitioner's complaint that trial counsel allowed Petitioner to be portrayed as "arguably a person with no settled existence in the area," (Appendix Ra17 13, Br. In Support of PCR, ECF No. 9-20), is without merit. Petitioner asserts that trial counsel failed "to present information that would allow the jury to understand that the Petitioner was enjoying a stable life with Jenny Forman, had the use of a car provided by her, was actively working . . . thus eliminating any motive to commit a crime[.]" (<u>Id.</u> at 9). However, Petitioner testified that he resided in Lumberton (Trial Tr. 59:2-7, Mar. 4, 2004, ECF No. 9-30), and, as previously discussed, the jury was made aware of the fact that he was in a relationship, that he lived with his girlfriend, and that he used her car. Further, as set forth above, trial counsel's decision not to elicit testimony regarding

41

Petitioner's employment was a reasonable trial strategy.
Accordingly, Petitioner has not shown that counsel was
ineffective in this respect and he is not entitled to habeas
relief on this ground.

    F. GROUND SEVEN: PETITIONER'S PCR PETITION SHOULD NOT HAVE
       BEEN PROCEDURALLY BARRED

    Petitioner states that the delay in the filing of his PCR
petition was due to excusable neglect.  However, because this
Court has addressed, and rejected, each of Petitioner's grounds
for relief in this Petition on the merits, Petitioner's
arguments regarding the timeliness of his PCR petition are moot.
The Court declines to make a determination with respect to this
issue.

    G. GROUND EIGHT: REQUEST FOR EVIDENTIARY HEARING

    Petitioner asserts that "an evidentiary hearing is required
for [Petitioner] to establish a prima facie showing of
ineffective assistance of counsel." (Am. Pet. 6, ECF No. 2).
With respect Petitioner's ineffective assistance of trial
counsel claims, the record shows that these issues were
adjudicated and denied on the merits by the state courts, as
discussed above.  Therefore, the facts necessary for a
determination of Petitioner's claims can be fully discerned from
the available state court record. See 28 U.S.C. § 2254(e)(2).
Moreover, as discussed above, the facts relevant to a

determination on Petitioner's claims as they relate to the performance of appellate counsel are likewise discernable from the available state court record.  And, as illustrated herein, this Court determines that the asserted claims — with respect to both appellate and trial counsel — are lacking in substantive merit.

Accordingly, Petitioner's request for an evidentiary hearing is denied as moot.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (citation omitted), cited in Eley v. Erickson, 712 F.3d 837, 845 (3d Cir. 2013).

Here, jurists of reason would not disagree with this Court's resolution of Petitioner's claims.  No certificate of appealability will issue.

## IV.   CONCLUSION

For the reasons set forth above, the Petition for a Writ of Habeas Corpus under Title 28 U.S.C. § 2254 will be denied.  An appropriate Order follows.


__s/ Noel L. Hillman_____
NOEL L. HILLMAN
United States District Judge

Dated: April 22, 2016
At Camden, New Jersey

44